# EXHIBIT "1"

Home Office Copy

NDO1076201F

# United States Liability Insurance Company

Renewal of Number

**1190 Devon Park Drive, Wayne, Pennsylvania 19087**

A Member Company of United States Liability Insurance Group

**POLICY DECLARATIONS**

## No. NDO1076201G

NAMED INSURED AND ADDRESS:

**DOLLAR POINT ASSOCIATION
P.O. BOX 1490
TAHOE CITY, CA 96145**

POLICY PERIOD: (MO. DAY YR.)   From:  03/31/2018  To:  03/31/2019

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION:  Non-Profit Directors and Officers

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

|  | PREMIUM |
|---|---|
| Directors And Officers Liability Coverage Part | $1,693.00 |
| **TOTAL:** | **$1,693.00** |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue

## See Endorsement EOD (1/95)

Agent:   **BURNS & WILCOX, LTD. (LAS VEGAS) (4573)
3883 Howard Hughes Parkway, Suite 1090
Las Vegas, NV  89169**

Issued:  **04/03/2018 12:59 PM**

Broker:

By: _Thomas P. Verney_

Authorized Representative

UPD (08-07)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS,
COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETE THE ABOVE NUMBERED POLICY.

**EXTENSION OF DECLARATIONS**

**Policy No. NDO1076201G**

Effective Date:   **03/31/2018**

12:01 AM STANDARD TIME

**FORMS AND ENDORSEMENTS**

**The following forms apply to the Directors And Officers Liability coverage part**

| Endt# | Revised | Description of Endorsements |
|-------|---------|----------------------------|
| DO-100 | 04/07 | Coverage Part A.  Non Profit Directors and Officers Liability |
| DO-101 | 04/07 | Coverage Part B.  Employment Practices Liability |
| DO-233 | 05/95 | Builder / Developer Exclusion Endorsement |
| DO-238 | 05/95 | Affiliated Parties Exclusion Endorsement |
| DO-283 | 01/14 | Data & Security+ Endorsement |
| DO-291 | 01/11 | Excess Benefit Transaction Excise Tax Endorsement |
| DO-293 | 06/13 | Amended Lifetime Occurrence Reporting Provision Endorsement |
| DO-294 | 04/14 | Amended Notice/Claim And Circumstance Reporting Provisions |
| DO-CA | 04/07 | California State Amendatory Endorsement |
| DO Jacket | 09/10 | Non Profit Professional Liability Policy |
| USL-DOJ | 03/08 | Non Profit Professional Liability Common Conditions |

# PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS

**PLEASE READ YOUR POLICY CAREFULLY.**

**THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.**

**No.  NDO1076201G**

Effective Date:  **03/31/2018**

12:01 AM STANDARD TIME

ITEM I. PARENT ORGANIZATION AND PRINCIPAL ADDRESS

**Dollar Point Association**
**P.O. Box 1490**
**Tahoe City, CA 96145**

ITEM II. POLICY PERIOD: (MM/DD/YYYY)  From:   03/31/2018  To:  03/31/2019

## Coverage Part A: Non Profit Directors and Officers Liability

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Non Profit Directors & Officers | $1,000,000 | EACH CLAIM |
| b. Non Profit Directors & Officers | $1,000,000 | IN THE AGGREGATE |

| | | |
|---|---|---|
| ITEM IV. RETENTION: | $0 | EACH CLAIM |
| ITEM V. PREMIUM: | $1,000 | |

## Coverage Part B: Employment Practices Liability

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Employment Practices | $1,000,000 | EACH CLAIM |
| b. Employment Practices | $1,000,000 | IN THE AGGREGATE |
| ITEM IV. RETENTION: | $5,000 | EACH CLAIM |
| ITEM V. PREMIUM: | $693 | |

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

**PLEASE READ YOUR POLICY CAREFULLY.**

**THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE.  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.**

No.  **NDO1076201G**                                 Effective Date:  **03/31/2018**

                                                     12:01 AM STANDARD TIME

**Coverage Part C: Fiduciary Liability**

ITEM III. LIMITS OF LIABILITY

    a. Fiduciary Liability          NOT COVERED


ITEM IV. RETENTION:          NOT COVERED

ITEM V. PREMIUM:          NOT COVERED


ITEM VI. Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:

    **See Endorsement EOD (01/95)**

COVERAGE PART A.  NON PROFIT DIRECTORS AND OFFICERS LIABILITY

NOTICE:  This is a Claims Made Policy.  This Policy only covers those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased.  **Defense Costs** shall be applied against the RETENTION.

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, the **Company** agrees as follows:


I.  INSURING AGREEMENT

A.  The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

B.  The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.


II.  FULL PRIOR ACTS COVERAGE PROVISION

Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy, or the effective date of cancellation or non-renewal of this Policy, provided that the **Claim** is first made during the **Policy Period**, or the Extended Reporting Period if applicable, and written notice of said **Claim** is reported to the **Company** as soon as practicable.  There shall be no coverage for any **Claim** reported to the **Company** later than sixty (60) days after the end of the **Policy Period** or after the expiration of the Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A.  The inception date of this Policy; or

B.  The inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

III. DEFINITIONS

A.  "**Application**" means:

(1) An application and any material submitted for this Policy and

(2) An application(s), including any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in this Policy as if physically attached hereto.

B.  "**Claim**" means:

(1)  Any written demand seeking money damages; or

(2)  Any proceeding initiated against the **Insured**, including any appeal  there from, before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act.**

A **Claim** shall be considered first made when the **Insured** or its legal representative or agent first receives notice of the **Claim**.

C.  "**Company**" means the insurer identified in the Policy Declarations.

D.  "**Defense Costs**" means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insureds**, resulting from the investigation, adjustment, defense and appeal of a **Claim.  Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured**.

E.  "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

F.  "**Employee**" means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns.  An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** that results in a **Claim**.

G.  "**Individual Insureds**" means any persons who were, now are, or shall be directors, trustees, officers, **Employees,** or committee members of the **Organization**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

H.  "**Insured**(s)" means the **Organization** and the **Individual Insureds**.

I.  "**Loss**" means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are

insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

J.   "**Organization**" means:
(1) The **Parent Organization**;
(2) Any **Subsidiary** of the **Parent Organization**; or
(3) Any entity in its capacity as a debtor in possession of (1) or (2) above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction.

K.   "**Outside Entity**" means any not-for-profit organization that qualifies as such under Section 501(c) of the Internal Revenue Code of 1986 (as amended).

L.   "**Parent Organization**" means the entity named in ITEM I. of the Policy Declarations.

M.   "**Personal Injury Act**" means any actual or alleged malicious prosecution, invasion of privacy, wrongful entry or eviction, libel, slander or defamation.

N.   "**Policy Period**" means the period from the effective date of this Policy set forth in ITEM II. of the Policy Declarations, to the expiration date or the effective date of cancellation or non-renewal date, if any.

O.   "**Subsidiary**" means any nonprofit entity which is more than 50% owned or controlled by the **Parent Organization** as of the effective date of this Policy and is disclosed as a subsidiary in an **Application** to the **Company**.

A non profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** if:
(1) its assets total less than 25% of the total consolidated assets of the **Parent Organization** at the time of formation or acquisition; and
(2) the formation or acquisition with full particulars about the new **Subsidiary** has been disclosed to the **Company** by the **Parent Organization** as soon as practicable but no later than the expiration date of the Policy, or effective date of cancellation or non-renewal of this Policy.

Any non profit entity formed or acquired after the effective date of this Policy whose assets total more than 25% of the total consolidated assets of the **Parent Organization** or any for profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** only if:

(1) the **Parent Organization** provides written notice to the **Company** of such **Subsidiary** as soon as practicable, but not later than sixty (60) days of the formation or acquisition of the **Subsidiary**; and

(2) the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine insurability of the **Subsidiary**; and

(3) the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company**; and

(4) the **Company**, at its sole discretion, agrees to insure the **Subsidiary**.

A **Subsidiary** which is sold or dissolved:

(1) after the effective date of this Policy and which was  an **Insured** under this Policy; or

(2) prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claim**s first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Acts** committed or allegedly committed during the time the entity was a **Subsidiary** of the **Parent Organization.**

P**.  "Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, or **Personal Injury Act** committed or allegedly committed;

(1) by the **Organization**; or

(2) by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

## IV. EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

A.  Any actual or alleged bodily injury, sickness, humiliation, mental anguish, emotional distress, assault, battery, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use. This exclusion shall not apply to **Claim** for humiliation, mental anguish or emotional distress resulting from any **Claim** from a **Personal Injury Act**;

B.  Any dishonest, fraudulent or criminal **Wrongful Act** by the **Insured**, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

C.  Any of the **Insureds** gaining any profit, remuneration or advantage to which the **Insured** was not legally entitled provided, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

D.  The actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, noise, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, whether or not such actual, alleged or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature, or any cost or expense arising out of any request, demand, or order that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants;

E.  Any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, source material, "special nuclear material", and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions by any federal, state or local statutory or common law;

F.  Any pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or any amendments thereof or regulations promulgated there under) or similar provisions of any federal, state or local statutory law or common law;

G.  Any **Claim** by, at the behest of, or on behalf of the **Organization** and/or any **Individual Insured**; provided that this Exclusion shall not apply to:
(1) any derivative action on behalf of, or in the name or right of the **Organization**, if such action is brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of, any of the **Insureds**; or
(2) a **Claim** that is brought and maintained by or on behalf of any **Individual Insured** for contribution or indemnity which is part of or results directly from a **Claim** which is otherwise covered by the terms of this Policy;

H.  Any actual or alleged: refusal to employ; termination of employment; employment related coercion, demotion, evaluation, reassignment, discipline, workplace conditions, false imprisonment, defamation, harassment, humiliation, or discrimination of employment; other employment-related practices, policies, acts or omissions; or sexual harassment by the **Insured** against any person(s) or entity; or negligence involving any of the foregoing;

it being understood that this Exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**;

I.  Any **Claims** made against the **Insured** based upon, arising out of, or in any way involving any actual or alleged discrimination, including but not limited to discrimination based on religion, race, creed, color, sex, age, marital status, sexual preference, pregnancy, handicap or disability;

J.  For actual or alleged liability of the **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to any **Claim** against an **Individual Insured**;

K.  Any pending or prior litigation, administrative or regulatory proceeding, claim, demand, arbitration, decree, or judgment of which the **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, or **Wrongful Act** which before the effective date of this Policy was the subject of any notice to an **Insured** under any other similar policy of insurance to the **Insured;** or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other Policy to the effective date of this Policy, the effective date of this Policy will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to an **Insured**;

L.  The rendering or failure to render medical, psychological or counseling services or referrals;

M.  Any **Claim** against any **Subsidiary** or its **Individual Insureds** for any **Wrongful Act** occurring prior to the date that such entity became a **Subsidiary** or any **Wrongful Act** occurring at any time that such entity is not a **Subsidiary**;

N.  The portion of any **Claim** covered under any other Coverage Part of this Policy;

No **Wrongful Act** of any **Individual Insured** nor any fact pertaining to any **Insured** shall be imputed to any other **Individual Insured** for purposes of determining the applicability of exclusions B. and C.

V.  LIMITS OF LIABILITY AND RETENTION

Regardless of the number of **Insureds** under this Policy, **Claims** made or brought on account of **Wrongful Acts** or otherwise, the **Company's** liability is limited as follows:

A. The LIMIT OF LIABILITY specified in the Policy Declarations as IN THE AGGREGATE shall be the maximum liability for **Loss** from all **Claims** to which this Coverage Part applies;

B.  The LIMIT OF LIABILITY specified in the Policy Declarations as the Limit for EACH **CLAIM** shall be the maximum liability for **Loss** for each **Claim** to which this Coverage Part applies;

C.  **Defense Costs** shall be in addition to the LIMIT OF LIABILITY as shown in the Policy Declarations, except for when Item G. below applies;

D.  Subject to the Limits of Liability provisions stated above, the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the RETENTION specified in the Policy Declarations hereof as respects each and every **Claim** to which the Coverage Part applies.

E.  The **Company** shall have no obligation to pay any part or all of the RETENTION specified in the Policy Declarations for any **Claim** on behalf of an **Insured**.  If the **Company**, at its sole discretion, elects to pay any part or all of the RETENTION, the **Insureds** agree to repay such amounts to the **Company** upon demand;

F.  The RETENTION shall not apply to **Loss** paid to or on behalf of an **Individual Insured** when the **Organization** has not indemnified an **Individual Insured** for such **Loss** subject to the terms and conditions of Section VII. INDEMNIFICATION/ WAIVER OF RETENTION;

G.  The LIMIT OF LIABILITY for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the LIMIT OF LIABILITY specified in the Declarations;

H.  **Claims** based upon or arising out of the same **Wrongful Act**, interrelated **Wrongful Acts**, or a series of similar or related **Wrongful Acts** shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Act**(s) was first made and all **Loss** for such **Claims** shall be subject to the one Limit of Liability that applies to such earliest **Claim**;

I.  The LIMIT OF LIABILITY for this Coverage Part shall apply separately to each consecutive annual period starting with the beginning of the **Policy Period** shown in the Declarations.  If this Policy is issued for a period of more than twelve (12) months but less than twenty four (24) months or if the **Policy Period** is extended after issuance, the Extended Reporting Period will be deemed part of the last preceding annual period for the purposes of determining the LIMIT OF LIABILITY.

VI. LIFETIME OCCURRENCE REPORTING PROVISION

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each **Individual Insured** who was not actively serving on behalf of the **Organization** at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim**(s) first made against the **Individual Insured** after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claim**(s) shall only be afforded in the event that the **Wrongful Act** was committed before the date of cancellation or non-renewal, and no Directors and Officers Liability policy, or policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is made.

## VII. INDEMNIFICATION / WAIVER OF RETENTION

Regardless of whether **Loss** and **Defense Costs** resulting from any **Claim** against an **Individual Insured** is actually indemnified by the **Organization**, the RETENTION set forth in the Policy Declarations shall apply to any **Loss** and **Defense Costs** if indemnification of the **Individual Insured** by the **Organization** is legally permissible. The certificate of incorporation, charter, articles of association or other organizational documents of the **Organization**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Individual Insured** to the fullest extent permitted by law.

However, if an **Individual Insured** is not indemnified for **Loss and Defense Costs** solely by reason of the **Organization's** financial insolvency or because indemnification is not legally permissible, an **Individual Insured's** RETENTION as stated on the Declarations for Coverage Part A. Non Profit Directors and Officers Liability, shall be amended to $0.  This change in Retention shall not affect any other terms or conditions of this Policy.

## VIII.  SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of (a) such spousal or **Domestic Partner** status; or (b) such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Acts**; any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim.**

All definitions, exclusions, terms and conditions of this Policy, including the RETENTION, applicable to any **Claim** against or **Loss** sustained by such **Individual Insured** shall also apply to this coverage extension.

The extension of coverage afforded by this Section VIII. shall not apply to the extent the **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach of duties by such spouse or **Domestic Partner.**

## IX. EXTENSION FOR OUTSIDE DIRECTORSHIP ACTIVITIES

Subject to the terms, conditions, exclusions and limitations of this Policy, coverage shall be extended under this Policy for any **Claim** against any director, officer or trustee of the

**Organization** while acting in the capacity of a director, officer or trustee of any **Outside Entity**, and performing duties related to the conduct of the **Outside Entity's** business, but only if such service is at the written request of the **Organization**.  Coverage under this Policy does not extend to any **Outside Entity** or to any other director, officer, trustee, **Employee**, temporary worker, volunteer or intern of such **Outside Entity**.  Any extension of coverage to any director, officer or trustee of the **Organization** as provided in this section shall be considered excess of any other indemnity or insurance available to or the director, officer or trustee under a Policy issued to the **Outside Entity** in question. Any payment for **Loss** under this extension shall reduce the LIMIT OF LIABILITY for this coverage part as set forth in the Declaration Page.

COVERAGE PART B.  EMPLOYMENT PRACTICES LIABILITY

NOTICE:  This is a Claims Made Policy.  This Policy only covers those **Claims** first made against **Insured** during the **Policy Period** or Extended Reporting Period, if purchased.  **Defense Costs** shall be applied against the RETENTION.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, the **Company** agrees as follows:


I.   INSURING AGREEMENT
A.   The **Company** will pay on behalf of an **Insured Loss** in excess of the RETENTION, not exceeding the LIMIT OF LIABILITY for which this coverage applies, that an **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Employment Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

B.   The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.


II.   FULL PRIOR ACTS COVERAGE PROVISION
Coverage shall apply to any **Claim** made against an **Insured** for **Wrongful Employment Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of the Policy or the effective date of cancellation or non-renewal of this Policy, provided that the **Claim** is first made during the **Policy Period**, or the Extended Reporting Period, if applicable, and written notice of said **Claim** is reported to the **Company** as soon as practicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Employment Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A.  The inception date of this Policy; or

B.  The inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.


III. DEFINITIONS
A.  "**Application**" means:

(1) An application and any material submitted for this Policy; and
(2) An application(s), including any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in this Policy as if physically attached hereto.

B.  "**Claim**" means:
(1) Any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Employment Act;** or
(2) Any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Employment Act**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal there from.

A **Claim** shall be considered first made when an **Insured** or its legal representative or agent first receives notice of a **Claim**.

C.  "**Company**" means the insurer identified in the Policy Declarations.

D.  "**Defense costs**" means reasonable and necessary legal fees and expenses incurred by the **Company**, or any attorney designated by the **Company** to defend the **Insureds,** resulting from the investigation, adjustment, defense and appeal of a **Claim**.  **Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured**.

E.  "**Discrimination**" means:
(1) The termination of an employment relationship;
(2) A demotion or failure to hire or promote any individual; or
(3) Any other limitation or classification of an **Employee** or applicant for employment which would deprive any individual of employment opportunities or adversely affect any individual's status as an **Employee**;

because of race, color, religion, age, sex, disability, pregnancy, national origin, marital status, sexual orientation or other protected class or characteristic established under applicable federal, state, or local statute, ordinance, regulation or order.

F.  "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

G.  "**Employee**" means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, volunteers, independent contractors and interns.  An **Employee's** status as an **Insured**

will be determined as of the date of the **Wrongful Employment Act** that results in a **Claim**.

H. "**Harassment**" means:
(1) Sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance; or
(2) Other workplace harassment which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

I. "**Individual Insureds**" means any persons who were, now are, or shall be directors, trustees, officers, **Employees**, or committee members of the **Organization**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

J. "**Insured**(s)" means the **Organization** and the **Individual Insureds**.

K. "**Loss**" means damages, settlements, front pay and back pay, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

L. "**Organization**" means:
(1) The **Parent Organization**; and
(2) Any **Subsidiary** of the **Parent Organization**, or
(3) Any entity in its capacity as a debtor in possession of (1) or (2) above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction.

M. "**Parent Organization**" means the entity named in ITEM I. of the Policy Declarations.

N. "**Policy Period**" means the period from the effective date of this Policy set forth in ITEM II. of the Policy Declarations, to the expiration date or the effective date of cancellation or non-renewal, if any.

O. "**Retaliation**" means any actual or alleged retaliatory treatment against an **Employee** because of:
(1) The exercise of or attempt to exercise an **Employee's** rights under law;

(2) An **Employee's** disclosure of or threat to disclose to a governmental agency or superior acts of actual or alleged wrongdoing by any **Insured**;
(3) The filing of any claim under any federal, state or local "whistle-blower" law including the Federal False Claims Act; or
(4) **Employee** strikes or slowdowns.

P. "**Subsidiary**" means any nonprofit entity which is more than 50% owned or controlled by the **Parent Organization** as of the effective date of this Policy and is disclosed as a **Subsidiary** in an **Application** to the **Company.**

A non profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** if:
(1) its assets total less than 25% of the total consolidated assets of the **Parent Organization** at the time of formation or acquisition; and
(2) the formation or acquisition with full particulars about the new **Subsidiary** has been disclosed to the **Company** by the **Parent Organization** as soon as practicable but no later than the expiration date of the Policy or effective date of cancellation or non-renewal of this Policy.

Any non profit entity formed or acquired after the effective date of this Policy whose assets total more than 25% of the total consolidated assets of the **Parent Organization** or any for profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** only if:
(1) the **Parent Organization** provides written notice to the **Company** of such **Subsidiary** as soon as practicable, but within sixty (60) days of the formation or acquisition of the **Subsidiary**; and
(2) the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine insurability of the **Subsidiary**; and
(3) the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company**; and
(4) the **Company**, at its sole discretion, agrees to insure the **Subsidiary.**

A **Subsidiary** which is sold or dissolved:
(1) after the effective date of this Policy and which was  an **Insured** under this Policy; or
(2) prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claim**s first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Employment Acts** committed or allegedly committed during the time the entity was a **Subsidiary** of the **Parent Organization.**

Q. "**Third Party**" means any person(s) with whom an **Insured** in their capacity as such interacts while the **Insured** is performing duties related to the conduct of the **Organization's** business.

R.  "**Third Party Discrimination**" means **Discrimination** by an **Insured** in their capacity as such against a **Third Party** based upon such **Third Party's** race, religion, age, sex, disability, national origin, sexual orientation or other protected class or characteristic established under applicable federal, state or local statute or ordinance.

S.  "**Third Party Harassment**" means;
(1) Workplace **Harassment** which creates an environment that is hostile, intimidating or offensive to a **Third Party;** or
(2) Sexual **Harassment** including any unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature against a **Third Party**;

Committed or allegedly committed by an **Insured** in their capacity as such while the **Insured** is performing duties related to the conduct of the **Organization's** business.

T.  "**Workplace Tort**" means any actual or alleged employment-related:
(1) misrepresentation;
(2) negligent supervision, training or evaluation;
(3) wrongful discipline;
(4) wrongful deprivation of a career opportunity; or
(5) failure to enforce written policies and procedures relating to a **Wrongful Employment Act**.

U.  "**Wrongful Employment Act**" means any actual or alleged act of:
(1) **Discrimination**;
(2) **Harassment**;
(3) **Retaliation**;
(4) **Wrongful Termination**;
(5) **Workplace Tort**;
(6) Negligent violation of the Uniform Services Employment & Reemployment Rights Act;
(7) Negligent violation of the Family and Medical Leave Act of 1993, or
(8) Negligent violation of state law having the same or substantially similar purpose as the acts in (6) or (7) above; or
(9) Acts described in clauses (1) through (8) above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;

committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization**; or asserted against an **Individual Insured** because of his/her status as such.

**Wrongful Employment Act** shall also include any actual or alleged act of:
(10) **Third Party Discrimination**
(11) **Third Party Harassment**

It is further agreed that the same **Wrongful Employment Act**, an interrelated series of **Wrongful Employment Acts** or a series of similar or related **Wrongful Employment Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Employment Act** and to have commenced at the time of the earliest **Wrongful Employment Act**.

V. "**Wrongful Termination**" means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment. **Wrongful Termination** shall not include a termination of employment, demotion or failure to promote any **Employee** which is or is alleged to be in breach or violation of an express contract of employment or an express obligation to make payments in the event of the termination of employment.

IV. EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving:

A. Any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use. This exclusion shall not apply to **Claims** for mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation that result from a **Wrongful Employment Act**;

B. Conduct of the **Insured** or at the **Insured's** direction that is fraudulent, dishonest or criminal provided that this exclusion will not apply to: (1) **Defense Costs** incurred until such conduct is proven in fact to be fraudulent, dishonest or criminal; or (2) the strictly vicarious liability of the **Insured** for the fraudulent, dishonest or criminal conduct of another **Insured**;

C. Any pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or any amendments thereof or regulations promulgated thereunder) or similar provisions of any federal, state or local statutory law or common law;

D. Any obligation under a worker's compensation, disability benefits, insurance benefits or unemployment compensation law, or any similar law; provided this exclusion will not apply to any **Claim** for actual or alleged **Retaliation** with regard to benefits paid or payable;

E. Any pending or prior litigation or administrative or regulatory proceeding, **Claim**, demand, arbitration, decree or judgment of which the **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, or **Wrongful**

**Employment Act** which before the effective date of this Policy was the subject of any notice under any other similar policy of insurance to the **Insured**; or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other Policy to the effective date of this Policy, the effective date of this Policy in this exclusion will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to the **Insured**;

F.  Any liability or costs resulting from the modification of any real or personal property in order to make said real or personal property more accessible or accommodating to any disabled person;

G.  Any lockout, strike, picket line, replacement of worker(s) or other similar actions resulting from labor disputes or labor negotiations; provided that this exclusion will not apply to a **Claim** for actual or alleged **Retaliation** arising from an **Insured's** alleged violation of such actions;

H.  Any **Claim** against any **Subsidiary** or its **Individual Insureds** for any **Wrongful Employment Act** occurring prior to the date that such entity became a **Subsidiary** or any **Wrongful Employment Act** occurring at any time that such entity is not a **Subsidiary**;

I.  The National Labor Relations Act, Labor Management Relations Act and amendments thereto, or any similar state, federal, or local law; provided that this Exclusion will not apply to a **Claim** for actual or alleged **Retaliation** arising from an **Insured's** alleged violation of such laws;

J.  The portion of any **Claim** covered under any other Coverage Part of this Policy;

K.  The **Insured's** actual or alleged liability for damages under any written contract or agreement; provided that this exclusion shall not apply to liability for a **Wrongful Employment Act** which the **Insured** would have in the absence of such contract or agreement.  This exclusion shall not apply to covered **Defense Costs** arising out of allegations of breach of an implied employment contract or agreement;

L.  Actual or alleged violations of the Fair Labor Standards Act (except the Equal Pay Act), any amendments thereto, or any similar provisions of any federal, state or local law; or improper wages or wage disputes due to misclassification of **Employees** as exempt or non exempt; or misrepresentation involving any **Employee's** status as exempt or non-exempt.

V.  LIMITS OF LIABILITY AND RETENTION

Regardless of the number of **Insureds** under this Policy, **Claims** made or brought on account of **Wrongful Employment Acts** or otherwise, the **Company's** liability is limited as follows:

A. the LIMIT OF LIABILITY specified in the Policy Declarations hereof as IN THE AGGREGATE shall be the maximum liability for **Loss** from all **Claims** to which this Coverage Part applies;

B. The LIMIT OF LIABILITY specified in the Policy Declarations as the Limit for EACH CLAIM shall be the maximum liability for **Loss** for each **Claim** to which this Coverage Part applies;

C. **Defense costs** shall be in addition to the LIMIT OF LIABILITY as shown in the Policy Declarations, except for when Item F. below applies;

D. Subject to the Limits of Liability provisions stated above, the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the RETENTION specified in the Policy Declarations hereof as respects each and every **Claim** to which this Coverage Part applies;

E. The **Company** shall have no obligation to pay any part or all of the RETENTION specified in the Policy Declarations for any **Claim** on behalf of any **Insured**. If **Company**, at its sole discretion, elects to pay any part or all of the RETENTION, the **Insureds** agree to repay such amounts to the **Company** upon demand;

F. The LIMIT OF LIABILITY for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the LIMIT OF LIABILITY specified in the Policy Declarations;

G. **Claims** based upon or arising out of the same **Wrongful Employment Act**, interrelated **Wrongful Employment Acts**, or a series of similar or related **Wrongful Employment Acts** shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Employment Act(s)** was first made and **Loss** for such **Claims** shall be subject to the one LIMIT OF LIABILITY that applies to such earliest **Claim**;

H. The LIMIT OF LIABILITY for this Coverage Part shall apply separately to each consecutive annual period starting with the beginning of the **Policy Period** shown in the Policy Declarations. If this Policy is issued for a period of more than twelve (12) months but less than twenty four (24) months or if the **Policy Period** is extended after issuance, the additional Extended Reporting Period will be deemed part of the last preceding annual period for the purposes of determining the Limit of Liability.

## VI.  LIFETIME OCCURRENCE REPORTING PROVISION

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each Director or Officer that was an **Insured**, but who did not serve as a Director or Officer at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim(s)** first made against the Director or Officer after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claims** shall only be afforded in the event that the **Wrongful Employment Act** was committed before the effective date of cancellation or non-renewal, and no Directors and Officers Liability policy (or policy providing essentially the same type of coverage) or extended reporting period is in effect at the time the **Claim** is made.

## VII.  SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of (a) such spousal or **Domestic Partner** status, or (b) such spouse or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Employment Acts**, any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim.**

All definitions, exclusions, terms and conditions of this Policy, including the RETENTION, applicable to any **Claim** against or **Loss** sustained by such **Individual Insured** shall also apply to this coverage extension.

The extension of coverage afforded by this Section VII. shall not apply to the extent the **Claim** alleges any wrongful act, error, omission, misstatement, misleading statement or neglect or breach of duties by such spouse or **Domestic Partner.**

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

---

This endorsement modifies insurance provided under the following:

### NON PROFIT DIRECTORS & OFFICERS LIABILITY

---

### BUILDER / DEVELOPER EXCLUSION ENDORSEMENT

In consideration of the premium paid, it is agreed that the **Company** shall not be liable to make any payment for **Loss** or **Defense Costs** in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, any **Claim** made by or against any builder and/or developer.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PENNSYLVANIA**

This endorsement modifies insurance provided under the following:

**NON PROFIT DIRECTORS & OFFICERS LIABILITY**
**EMPLOYMENT PRACTICES LIABILITY**

**AFFILIATED PARTIES EXCLUSION ENDORSEMENT**

It is hereby agreed that the **Company** shall not be liable to make any payment for **Loss** or **Defense Costs** in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly, resulting from or in consequence of, any **Claim** made against any affiliates, chapters, branches or members of the Named **Insured**.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

> This endorsement modifies insurance provided under the following:
> **NON PROFIT DIRECTORS AND OFFICERS LIABILITY**

# DATA & SECURITY<sup>+</sup> ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the Policy to which it is attached.

I.  SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| A. Data Breach Expense | $50,000 each claim<br>$50,000 in the aggregate |
| B. Identity Theft Expense | $50,000 each claim<br>$50,000 in the aggregate |
| C. Workplace Violence Expense | $50,000 each claim<br>$50,000 in the aggregate |
| D. Kidnap Expense | $50,000 each claim<br>$50,000 in the aggregate |

In no event shall the **Company** pay more than $200,000 in any one **Policy Period** for any combination of **Claims** for covered expenses shown above. No retention applies to any claim or in the aggregate.

II.  COVERAGES:

Words shown in **bold** shall have the meaning provided in III. DEFINITIONS of this endorsement or as provided in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, III. DEFINITIONS, as applicable.

A.  Data Breach Expense

The **Company** will pay on behalf of the **Organization** up to the **Data Breach** Expense Limit of Liability stated in the schedule above, for reasonable and necessary expenses in item 1. – 6 below incurred by the **Organization** as a result of a **Data Breach.** The **Data Breach** must be first discovered by an **Insured** during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Data Breach** is first discovered by an **Insured**. The expenses below must be incurred within one (1) year of the reporting of such **Data Breach**:

1.  Development of a plan to assist the **Organization** in responding to a **Data Breach**;

2.  Data analysis or forensic investigation to assess the scope of a **Data Breach**;

3.  The development, printing and mailing of legally required notification letters to those affected by a **Data Breach;**

4. Development of a website link for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent;

5. Development of a customer relationship management system for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent**;**

6. Public relations services or crisis management services retained by the **Organization** to mitigate the adverse affect on the **Organization's** reputation with customers, investors and employees resulting from a **Data Breach** that becomes public and only after legally required notification letters are sent.

The **Organization** must first report the **Data Breach** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above costs. The **Data Breach** must first occur during the **Policy Period**.

B. Identity Theft Expense

The **Company** will pay on behalf of a Director or Officer of the **Organization** up to the **Identity Theft** Expense Limit of Liability stated in the schedule above, for expenses, services or fees noted in item 1. – 3. below incurred by such Director or Officer after he or she has become a victim of **Identity Theft.** The **Identity Theft** must be first discovered by an **Insured** during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the Identity Theft is first discovered by an **Insured.** The expenses below must be incurred within one (1) year of the reporting of such **Identity Theft**:

1. Credit monitoring services provided by a vendor of the **Company's** choice for the affected Director or Officer for up to one year following an **Identity Theft;**

2. Additional application fees paid by a Director or Officer whose loan(s) were rejected based on incorrect credit information resulting from an **Identity Theft**;

3. Notary fees, certified and overnight mail expenses paid by a Director or Officer in connection with reporting an **Identity Theft** to financial institutions, credit bureaus and agencies and law enforcement authorities.

Any Director or Officer of the **Organization** who is a victim of **Identity Theft** must first report the **Identity Theft** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above expenses, services or fees. The **Identity Theft** must first occur during the **Policy Period**.  In no event shall the **Company's** total **Policy Period** payment under this coverage be more than the per claim or aggregate limit shown on the Policy Declarations

C. Workplace Violence Expense

The **Company** will reimburse the **Organization,** up to the Workplace Violence Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** for a period of thirty (30) days following, and as a result of, a **Workplace Violence Act**:

1. Counseling services rendered to **Employees** and persons on the **Organization's Premises** directly affected by a **Workplace Violence Act**.  The counseling services must be rendered by a licensed, professional counselor of the **Organization's** choice.

2. Services rendered by an independent public relations consultant of the **Organization's** choice for the purpose of mitigating the adverse affect of a **Workplace Violence Act** on the **Organization**.

To be covered, the **Workplace Violence Act** must occur during the **Policy Period** and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

D. Kidnap Expense

The **Company** will reimburse the **Organization,** up to the Kidnap Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** as a result of a **Kidnapping** occurring during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

1. Retaining an independent negotiator or consultant to facilitate the release of a **Kidnapping** victim.  Nothing herein shall obligate the **Company** to recommend, select, retain or arrange for the retention of such independent negotiator or consultant;

2. Interest on a loan obtained by the **Organization** to pay expenses covered under this endorsement that is incurred as a result of a **Kidnapping.**  However, there is no coverage for interest accruing prior to thirty (30) days preceding the date of such payment or subsequent to the date the **Company** pays any portion of a Kidnap Expense or for expenses not covered under this endorsement;

3. Travel and accommodations incurred by the **Organization** in direct response to the **Kidnapping.**  Nothing herein shall obligate the **Company** to recommend, select, or arrange for such travel and accommodations;

4. A reward up to $10,000 paid by the **Organization** to an informant for information which leads to the arrest and conviction of the person(s) responsible for the **Kidnapping**;

5. The current base salary paid to a Director or Officer of the **Organization** for the Director or Officer's work on behalf of the **Organization**, who is a victim of a **Kidnapping** subject to the following:

   (a) salary reimbursement shall commence on the thirty-first (31st) consecutive day after a **Kidnapping**;

   (b) salary reimbursement shall end when the Director or Officer is released; or is confirmed dead; or one hundred and twenty (120) days after the Director or Officer is last confirmed to be alive; or twelve (12) months after the date of the **Kidnapping**, or when the Kidnap Expense Limit of Liability has been exhausted by payments made by the **Company**, whichever occurs first.

There is no coverage for Kidnap Expense resulting from a **Kidnapping** planned, carried out or participated in, directly or indirectly, by any person who is or was a member of the victim's family or the **Organization**.

## III. DEFINITIONS

"**Data Breach**" means the misappropriation or public disclosure, by electronic or non-electronic means, by the **Organization** and without the knowledge of, consent, or

acquiescence of the President or member of the Board of Directors or any executive officer, of an individual(s) **Personally Identifiable Information** in the **Organization's** care, custody and control without the authorization or permission of the owner of such information.

"**Identity Theft**" means (1) the act of obtaining **Personally Identifiable Information** belonging to a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary(ies)** without that person's authorization, consent or permission; and (2) the use of **Personally Identifiable Information** so obtained to make or attempt to make transactions or purchases by fraudulently assuming that person's identity.

> **Identity Theft** does not mean any of the above committed directly or indirectly by a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary**(ies) or a family member of a Director or Officer.

There is no coverage for any **Identity Theft** Expense unless **Personally Identifiable Information** that is obtained without authorization, consent or permission is used to make or attempt to make transactions or purchases by fraudulently assuming the identity of a Director or Officer of the **Parent Organization** or a Director or Officer of the **Parent Organization's Subsidiary**(ies).

"**Kidnapping**" means an actual or alleged wrongful abduction and involuntary restraint of a Director or Officer of the **Organization**, by one or more persons acting individually or collectively in which monetary or non-monetary demands are made to the **Organization** to obtain the Directors or Officers release.

**Personally Identifiable Information** means;
(1) information concerning an individual(s) that would be considered "non-public information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (as amended) and its implementing regulations including but not limited to Social Security numbers or account numbers correlated with names and addresses which is in an Insured's care, custody and control; and
(2) personal information as defined in any U.S. federal, state or local privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder; and
(3) protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPPA") or the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH") (Public Law 111- 5), as amended, and any regulations promulgated thereto.
**Personally Identifiable Information** does not mean information that is available to the public which does not include otherwise protected personal information.

"**Premises**" means buildings, facilities or properties leased or owned by the **Organization** in conducting its operations.

"**Workplace Violence Act**" means:
1. an actual use of unlawful deadly force, or
2. the threatened use of unlawful deadly force involving the display of a lethal weapon,

occurring on the **Organization's Premises** and directed at an **Individual Insured,** or other persons on the **Premises** of the **Organization**.

Where applicable, other terms used in this endorsement shall have the same meaning as defined in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY**.**

## IV. LIMITS OF LIABILITY AND RETENTION

The Limit of Liability specified above as in the aggregate shall be the maximum liability for all expenses to which the coverage applies.

The Limit of Liability specified above as the Limit for each claim shall be the maximum liability for expenses for each claim to which the coverage applies.

The maximum Limit of Liability for any expenses provided by this endorsement shall be in addition to the LIMIT OF LIABILITY specified in the Declarations IN THE AGGREGATE for COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY.

The RETENTION shown on the Policy Declarations shall not apply to the expense coverage provided by this endorsement.

Regardless of the amount of covered expenses incurred by the **Organization** under this endorsement, the maximum Limit of Liability for any one **Data Breach**, **Identity Theft**, **Kidnapping** or **Workplace Violence Act** shall be $50,000 each claim and in the aggregate. Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to the maximum Limit of Liability available under this endorsement at the time the incident(s) is first reported to the Company regardless of whether the incident(s) continues and expenses are incurred by the Organization in any subsequent Policy Period(s).

## V. ADDITIONAL EXCLUSIONS

The insurance provided by this endorsement does not apply to:

1. Expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled.

2. Expense(s) arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice.

3. Expenses incurred by any **Subsidiary** of an **Organization** occurring prior to the date that such entity became a **Subsidiary** or incurred at any time that such entity is not a **Subsidiary**.

4. The portion of any expense(s) covered under this endorsement that is also covered under any other coverage part of this Policy.

5. Reissuance of credit or debit cards or any other expense not shown in Section II, COVERAGES, sub-section A, **Data Breach Expense**.

## VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, do not apply to this endorsement:

1. Common Policy Conditions; I. EXTENDED REPORTING PERIOD.
2. II. FULL PRIOR ACTS COVERAGE PROVISION.
3. IV. EXCLUSION A
4. VI. LIFETIME OCCURRENCE REPORTING PROVISION
5. VIII. SPOUSAL AND DOMESTIC PARTNER EXTENSION.
6. IX. EXTENSION FOR OUTSIDE DIRECTORSHIP ACTIVITIES.

Otherwise, the terms and conditions of COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, shall apply where applicable to give effect to this endorsement.

Coverage provided by your Policy and any endorsements attached thereto are amended by this endorsement where applicable.  All other terms and conditions of this Policy remain unchanged. This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

### NON PROFIT DIRECTORS & OFFICERS LIABILITY

## EXCESS BENEFIT TRANSACTION EXCISE TAX ENDORSEMENT

For purposes of this endorsement only, it is agreed:

COVERAGE PART A., III. DEFINITIONS, I. "**Loss**" is amended to include the following:

"**Loss**" means a ten percent (10%) **Excess Benefit Transaction Excise Tax** assessed by the Internal Revenue Service against any **Individual Insured(s)** who participated as an **Organization Manager** in connection with an **Excess Benefit Transaction**.

"**Loss**" does not mean:

1. A twenty five percent (25%) **Excess Benefit Transaction Excise Tax** assessed by the Internal Revenue Service against an **Individual Insured** as a **Disqualified Person** in connection with an **Excess Benefit Transaction**; or

2. A two hundred percent (200%) **Excess Benefit Transaction Excise Tax** assessed by the Internal Revenue Service against an **Individual Insured** as a **Disqualified Person** for failing to correct an **Excess Benefit** arising out of or resulting from an **Excess Benefit Transaction.**

COVERAGE PART A., III. DEFINITIONS is amended by the addition of the following:

"**Excess Benefit Transaction**" means a transaction as defined in Internal Revenue Code, Title 26 §4958 (c)(1)**.**

"**Excess Benefit**" means the excess resulting from an **Excess Benefit Transaction** as defined above.

"**Excess Benefits Transaction Excise Tax**" is any excise tax imposed by the Internal Revenue Service on an **Individual Insured** who is an **Organization Manager** as a result of that **Individual Insured**'s participation in an Excess Benefit Transaction as defined in the Internal Revenue Code, Title 26 §4958 (c)(1).

"**Organization Manager**" means a person or persons described in Internal Revenue Code, Title 26 §4958(f)(2).

"**Disqualified Person**" means a person or persons described in Internal Revenue Code, Title 26 §4958(f)(1)(A).

COVERAGE PART A., V. LIMITS OF LIABILITY AND RETENTION is amended by the addition of the following:

The maximum Limit of Liability for **Excess Benefit Transaction Excise Tax Claims** covered by the endorsement shall be part of and not in addition to the LIMIT OF LIABILITY

specified in the Declarations as IN THE AGGREGATE and shall not exceed the lesser of such limit or $20,000.  **Defense Costs** as provided above shall be part of and not in addition to the LIMIT OF LIABILITY.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## NON PROFIT PROFESSIONAL LIABILITY POLICY

## AMENDED LIFETIME OCCURRENCE REPORTING PROVISION ENDORSEMENT

It is hereby agreed that:

COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, VI. LIFETIME OCCURRENCE REPORTING PROVISION is deleted in its entirety and replaced with the following:

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each director, officer, **Employee** or committee member who did not serve as such at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim**(s) first made against such person after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claim**(s) shall only be afforded in the event that:
   A. the **Wrongful Act** was committed before the date of cancellation or non-renewal; and
   B. the person was a director, officer, **Employee** or committee member during the **Policy Period** of a Policy issued by the **Company,** provided the **Company** has written continuous coverage for the  **Parent Organization** from the effective date of the first Policy to the date of cancellation or non-renewal of this Policy; and
   C. no Directors and Officers Liability policy, or policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is made.

COVERAGE PART B. EMPLOYMENT PRACTICES LIABILITY, Section VI. LIFETIME OCCURRENCE REPORTING PROVISION is deleted in its entirety and replaced with the following:

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each director or officer who did not serve as such at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim(s)** first made against such person after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claim**(s) shall only be afforded in the event that:

A. the **Wrongful Employment Act** was committed before the date of cancellation or non-renewal; and

B. the person was a director or officer during the **Policy Period** of a Policy issued by the **Company,** provided the **Company** has written continuous coverage for the **Parent Organization** from the effective date of the first Policy to the date of cancellation or non-renewal of this Policy; and

C. no Directors and Officers Liability or Employment Practices Liability policy, or policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is made.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of the **Parent Organization**'s Policy and takes effect on the inception date of the **Parent Organization**'s Policy unless another inception date is shown.

| This endorsement modifies insurance provided under the following: |
|---|
| **NON PROFIT DIRECTORS & OFFICERS LIABILITY** |

## Amended Notice/Claim And Circumstance Reporting Provisions

It is agreed:

I. INSURING AGREEMENT, A. of COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY is deleted in its entirety and replaced by:

  A.  The **Company** will pay on behalf of the **Insured**, **Loss** in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**. Such **Claim** must be reported to the **Company** in accordance with Section IV. NOTICE/CLAIM REPORTING PROVISIONS of the COMMON POLICY CONDITIONS.

II. FULL PRIOR ACTS COVERAGE PROVISION of COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY is deleted in its entirely and replaced by:

  Coverage shall apply to any **Claim** made against an **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy or the effective date of cancellation or non-renewal of this Policy, if applicable, provided that the **Claim** is first made during the **Policy Period**, or Extended Reporting Period, if applicable. Such **Claim** must be reported to the **Company** in accordance with IV. NOTICE/CLAIM REPORTING PROVISIONS of the COMMON POLICY CONDITIONS.

  However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

  A.  the inception date of this Policy; or
  B.  the inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

I EXTENDED REPORTING PERIOD, A. of the COMMON POLICY CONDITIONS is deleted in its entirety and replaced by:

I.  EXTENDED REPORTING PERIOD

  A.  If the policy expires, is cancelled or non-renewed for any reason other than non-payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report to the **Company** as soon as practicable during the Extended Reporting Period any **Claim (s)** being first made against an **Insured** during the twelve (12) months, or twenty-four (24) months  or  thirty six (36) months after the effective date

of such expiration, non-renewal or cancellation (depending upon the Extended Reporting Period purchased,). For the purpose of this section, any change in premium terms or terms on renewal shall not constitute a refusal to renew.  An Extended Reporting Period shall only apply to a **Claim** arising from a **Wrongful Act** or **Wrongful Employment Act** which was committed before the date of such expiration, cancellation or non-renewal.

IV. NOTICE/CLAIM REPORTING PROVISIONS of the COMMON POLICY CONDITIONS is deleted in its entirety and replaced by:

IV. Notice hereunder shall be given in writing to the **Company**.  If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

   A.  **Written Notice of a Claim:**

     (1) As a condition precedent to exercising any right to coverage under this Policy, an **Insured** shall give to the **Company** written notice of a **Claim,** as soon as practicable but:

       (a) if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than sixty (60) days after the expiration date or effective date of such cancellation or non-renewal. Coverage for a **Claim** reported to the **Company** during the sixty **(**60) day period after expiration, cancellation or non-renewal applies only if the **Claim** is first made against an **Insured** prior to the Policy expiration or effective date of cancellation or non-renewal; or

       (b) if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period;

      provided that if the **Company** sends written notice to the **Parent Organization** stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give to the **Company** written notice of such **Claim** prior to the effective date of such termination.

     (2) Coverage for a **Claim** reported to the **Company** during an Extended Reporting Period shall only apply if the **Claim** arises from a **Wrongful Act** or **Wrongful Employment Act** committed before the date of the Policy expiration, cancellation or non-renewal.

   B.  **Written Notice of a Circumstance:**

     An **Insured** shall give to the **Company** written notice of a circumstance which could reasonably be expected to give rise to a **Claim** for a **Wrongful Act** or **Wrongful Employment Act** being made against an **Insured** as soon as practicable during the **Policy Period** in which an **Insured** first becomes aware of the circumstance.

   C.  If written notice of a circumstance which could reasonably be expected to give rise to a **Claim** being made against an **Insured** for a **Wrongful Act** or **Wrongful Employment Act** has been given to the **Company** during the **Policy Period**, any **Claim** which is subsequently made against an **Insured** and reported to the **Company** alleging, arising out of, based upon, or attributable to the facts specifically alleged in the reported circumstance shall be considered to have been first made at the time such notice of the circumstance was given to the **Company**.  Coverage for a circumstance reported pursuant to this provision applies only if the **Wrongful Act** or **Wrongful Employment Act** that is the subject of the reported circumstance occurs prior to the expiration date or if applicable, prior to the effective date of cancellation or non-renewal of the **Policy Period**

in which the circumstance was reported.

D.   Notice of a circumstance under Section B., above shall include the specific facts of the actual or alleged **Wrongful Act** or **Wrongful Employment Act** including relevant dates and identities of the persons involved in sufficient detail to allow **Company** to conduct an investigation.

All other terms and conditions of this Policy remain unchanged.  This endorsement is part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown**.**

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**NON PROFIT PROFESSIONAL LIABILITY POLICY**

## CALIFORNIA STATE AMENDATORY ENDORSEMENT

To be attached to and form a part of all Non Profit Professional Liability Policies written in the state of California.

It is hereby agreed that the following is added to USL DOJ, Section V. CANCELLATION OR NON RENEWAL, and supersedes any provisions to the contrary:

1. Subject to the provisions of Paragraph 2.b. below, if the **Company** elects not to renew this Policy, it will mail or deliver written notice stating the reason for non-renewal to the first **Named Insured** shown in the Declarations and to the producer of record, at least sixty (60) days, but not more then one hundred twenty (120) days before the expiration or anniversary date.  The **Compan**y will mail or deliver notice to the first **Named Insured**, and to the producer of record, at the mailing address shown in the Policy.

2. The **Company** is not required to send notice of non-renewal in the following situations:
   a. If the transfer or renewal of a Policy, without any changes in terms, conditions or rates, is between the **Company** and a member of the **Company's** Insurance Group.
   b. If the Policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with Paragraph 1.
   c. If the first **Named Insured** has obtained replacement coverage, or has agreed in writing within sixty (60) days of the termination of the Policy, to obtain that coverage.
   d. If the Policy is for a period of no more than sixty (60) days and the first **Named Insured** is notified at the time of issuance that it will not be renewed.
   e. If the first **Named Insured** requests a change in the terms or conditions or risks covered by the policy within sixty (60) days of the end of the **Policy Period.**
   f. If the **Company** has made a written offer to the first **Named Insured**, in accordance with the time frames shown in Paragraph 1. to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

DO CA (04-07)                                                                                       Page 1 of 1

# NON PROFIT

# PROFESSIONAL

# LIABILITY

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# NON PROFIT PROFESSIONAL LIABILITY POLICY

## Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary                                                    President

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

### NON PROFIT PROFESSIONAL LIABILITY POLICY
### COMMON POLICY CONDITIONS

Except for the Common Policy Conditions, the terms and conditions of each Coverage Part shall apply only to that Coverage Part unless otherwise provided. If any provision in these Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for the purposes of that Coverage Part. Any defined term referenced in these Common Policy Conditions but defined in a Coverage Part shall, for the purposes of coverage under that Coverage Part have the meaning set forth in that Coverage Part.

### I. EXTENDED REPORTING PERIOD

A. If the Policy expires, is cancelled or non-renewed for any reason other than non payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report any **Claim**(s) first made against an **Insured** during the twelve (12) months, or twenty-four (24) months or thirty-six (36) months after the effective date of such expiration, cancellation or non-renewal (depending upon the Extended Reporting Period purchased). An Extended Reporting Period shall only apply to a **Wrongful Act** or **Wrongful Employment Act** committed before the date of such expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

B. The additional premium for the Extended Reporting Period shall be 30% of the annual premium set forth in the Policy Declarations for the twelve (12) month period, 75% of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period, and 120% of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or the effective date of cancellation or non-renewal of the Policy. The **Parent Organization** must notify the **Company** in writing and must pay the additional premium due above no later than thirty (30) days after the effective date of such expiration, cancellation or non-renewal.

C. All premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

D. The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of the cancellation or non-renewal of the Policy.

E. Coverage for **Claim**(s) first received and reported during the Extended Reporting Period shall be in excess over any other valid and collectible insurance providing coverage for such **Claim**(s).

### II. DEFENSE AND SETTLEMENT

A. The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company**. The **Insured** shall not, except at personal cost, make any offer, any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

B. If a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of **Defense Costs** for the **Claim** until such time that the Limits of Liability of this Policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment.

C. The **Company**, as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or above the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**; the **Company** is not obligated to pay any **Loss** or defend any **Claim** after the Limit of Liability has been exhausted by payment of **Loss**. The **Company's** obligation to the **Insured** for **Defense Costs** and **Loss** attributable to such **Claim**(s) shall be limited to:

(a) The amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle;

(b) Plus covered **Defense Costs** incurred up to the date the **Insured** first refused to settle;

(c) Plus seventy five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of (a), (b) and (c) above, is the limit of the **Company's** liability under this Policy on any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of the applicable coverage section. The remaining twenty five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in (a) and (b) above shall be the obligation of the **Insured**.

D. The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

E. The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

III. ORDER OF PAYMENTS

In the event payment of **Loss** is due under this Policy but the amount of such **Loss** exceeds the remaining available Limit of Liability specified in the Policy Declarations, the **Company** will:

(a) first pay such **Loss** on behalf of the **Individual Insured(s)** for which coverage is provided under Section I. Insuring Agreement; then

(b) to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** on behalf of the **Organization** for which coverage is provided under Section I. Insuring Agreement.

IV. NOTICE/ CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

A. As a condition precedent to exercising any right to coverage under this Policy, the **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable, but:

(1) if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than 60 days after the expiration date or the effective date of such cancellation or non-renewal; or

(2) if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period.

B. If written notice of a **Claim** has been given to the **Company** pursuant to Clause IV.A. above, then any **Claim** which is subsequently made against the **Insured** and reported to the **Company** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which notice was given or alleging any **Wrongful Act** or **Wrongful Employment Act** which is the same as or related to any **Wrongful Act** or **Wrongful Employment Act** alleged in the **Claim** for which notice was given, shall be considered made at the time such notice was given.

C. If during the **Policy Period** the **Insured** shall become aware of any circumstances which could give rise to a **Claim** being made against the **Insured**, the **Insured** shall give written notice to the **Company** of the circumstances and the reasons for anticipating such a **Claim** with full particulars as to dates and persons involved. Such notice must be given to the **Company** within the Policy Period. Any **Claim** which is

subsequently made against the **Insured** and reported to the **Company** as required by the Policy alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** or **Wrongful Employment Act** which is the same as or related to any **Wrongful Act** or **Wrongful Employment Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was first given to the **Company.**

## V.  CANCELLATION OR NON-RENEWAL

A.  This Policy may be canceled by the **Parent Organization** by either surrender thereof to the **Company** at its address stated in the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such cancellation shall be effective.   If canceled by the **Parent Organization**, the **Company** shall retain the customary short rate proportion of the premium.

B.  The **Company** may cancel this Policy only in the event of the failure of the **Insured** to pay the premium when due by mailing to the **Parent Organization** written notice when, not less than ten (10) days thereafter, such cancellation shall be effective.

C.  In the event the **Company** refuses to renew this Policy, the **Company** shall mail to the **Parent Organization**, not less than sixty (60) days prior to the end of the Policy Period, written notice of non-renewal.   Such notice shall be binding on all **Insureds**.

D.  The mailing of notice of cancellation or non-renewal shall be sufficient notice and the effective date of cancellation or non-renewal stated in any such notice shall become the end of the Policy Period.   Delivery of such written notice by the **Parent Organization** or the **Company** shall be equivalent to the mailing.

E.  If the Policy is canceled by the **Company**, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, or as soon as practicable thereafter.

## VI.  REPRESENTATIONS AND SEVERABILITY

A.  The **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

B.  Except for material facts or circumstances known to the person or persons signing the **Application**, no statement in the **Application** or knowledge or information possessed by an **Insured** shall be imputed to any other **Insured** for the purpose of determining the availability of coverage.

## VII.  SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to the **Insured's** right of recovery therefore against any person or entity and the **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights.   The **Insured** shall do nothing to prejudice such rights.

## VIII. CHANGES

Notice to any agent or knowledge by any agent shall not affect a waiver or change in any part of this Policy or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed except by an endorsement, issued by the **Company** to form a part of this Policy.

## IX.  AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Policy, the **Insured** agrees that the **Parent Organization** shall act on behalf of all **Insureds** with respect to the giving and receiving of any return premiums that may become due under the Policy.   Notice to the **Parent Organization** shall be directed to the individual named in the **Application**, or such other person as shall be designated by the **Parent Organization** in writing, at the address of the **Parent Organization**.   Such notice shall be deemed to be notice to all **Insureds**.   The **Parent Organization** shall be the agent of all **Insureds** to effect changes in the Policy or purchase Extended Reporting Period.

## X.  ASSIGNMENT

Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed hereon.

## XI.  OTHER INSURANCE

This Policy shall be excess of and not contribute with other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy.

## XII.   TERMS OF POLICY CONFORMED TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.

## XIII. CHANGES IN EXPOSURE

If after the Inception Date of this Policy:

(1) the **Parent Organization** merges into or consolidates with another entity such that the **Parent Organization** is not the surviving entity; or

(2) another entity, person or group of entities and/or persons acting in concert acquires more than fifty percent (50%) of the assets of the **Parent Organization**; or

(3) another entity, person or group of entities and/or persons acting in concert acquires the right to elect or select a majority of the directors of the **Parent Organization**; or

(4) the **Parent Organization** sells all or substantially all of its assets,

with such events being referred to as a "Transaction,"

this Policy shall continue in full force and effect until the expiration date of the policy, or the effective date of cancellation or non-renewal if applicable with respect to **Wrongful Acts** or **Wrongful Employment Acts** occurring before the Transaction, but there shall be no coverage under this Policy for actual or alleged **Wrongful Acts** or **Wrongful Employment Acts** occurring on and after the Transaction.

The **Parent Organization** shall give the **Company** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction. The entire premium for this Policy shall be deemed earned regardless of any Transaction(s) during the Policy Period.  In the event of a Transaction, the **Parent Organization** shall have the right to an offer of coverage by the **Company** for an Extended Reporting Period to report **Wrongful Acts** or **Wrongful Employment Acts** occurring prior to the effective date of the transaction.

## XIV. ACTION AGAINST THE COMPANY

A.  No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

B.  Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or entity shall have any right under this Policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or their legal representatives.  Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.