# EXHIBIT "2"

December 28, 2018

Patricia Tweedy, Esquire
President
**The Dollar Point Association**
P.O. Box 1490
Tahoe City, CA 96145

| | |
|---|---|
| **Insured:** | Dollar Point Association |
| **Policy Type:** | Non-Profit Directors and Officers |
| **Policy No.:** | NDO1076201G          03/31/2018 to 03/31/2019 |
| **Our Claim No.:** | K130504 |
| **Plaintiffs:** | Michael Harris and Anne Harris |
| **Notice of Claim:** | November 30, 2018 |

### BY E-MAIL TRANSMISSION ONLY

Dear Ms. Tweedy:

Please be advised that I am the Examiner at United States Liability Insurance Company ("USLI") assigned to the handling of the above matter. On or about November 30, 2018, USLI received notice of your attorney, Dean Headley's, tendered this action for a defense and possible indemnity. We have reviewed the Complaint and the USLI Policy issued to Dollar Point Association ("Dollar Point.") The purpose of this letter is to advise you that USLI will provide Dollar Point with a defense to the *Harris, et al. v. Dollar Point* action, pursuant to the Reservation of Rights discussed below. In essence, while it appears that the *Harris, et al. v. Dollar Point* action constitutes a "Claim" as that term is defined in the USLI Policy, there are no monetary damages being sought against Dollar Point at this time, only equitable measures of relief. Since payment under the USLI Policy is limited to the payment of "Loss," and "Loss" does not include such equitable measures of relief, this means that while USLI will provide Dollar Point with a defense to the *Harris, et al. v. Dollar Point* action, Dollar Point, and not USLI, will be responsible for satisfying any relief that is ordered against it.

On or about November 1, 2018, Plaintiffs Michael Harris and Anne Harris ("Harris") filed their Complaint in the Placer County Superior Court, Case No.: SCV0042030 against Defendants Dollar Point Association and others (the "Underlying Action.") Plaintiffs are alleged to be the owners of Unit 5 of the Dollar Point development since October 10, 1996. Their property is adjacent to Lot 62 of the development. Plaintiffs allege that the prior owner of their lot had landscaped a portion of Lot 62 where it abutted their lot.

Plaintiffs allege that on May 23, 2000, they signed an Agreement with Dollar Point in which the latter contended it owned Lot 62 but granted Plaintiffs a five year, nonexclusive license to perform certain landscaping and other acts on Lot 62. In 2008, Dollar Point elected to terminate the license agreement and sent notice to Plaintiffs to remove all landscaping and related improvements to Lot 62. Plaintiffs claim that despite this notice of termination, they have continued to cultivate, improve and maintain the lawn, shrubs and steps on Lot 62 where it abuts their property, at their own expense. In 2012, at the request of Dollar Point, Plaintiffs removed sprinkler heads from Lot 62 and placed them in their property but they continued to regularly water the lawn and shrubs on Lot 62. Plaintiffs allege that Dollar Point was aware that Plaintiffs have continuously, and at their own expense, maintained that portion of Lot 62 where it abuts their property. In essence, Plaintiffs are seeking various orders from the court decreeing its property rights with respect to Lot 62.

Based on these allegations, Plaintiffs seek the following relief: (1) Irrevocable License; (2) Declaratory Relief; (3) Quiet Title – Adverse Possession; and (4) Quiet Title – Easement by Prescription. Plaintiffs are not seeking any monetary damages but rather various orders from the court clarifying the parties' respective rights to that portion of Lot 62 in question.

USLI issued its Directors and Officers Liability Policy No.: NDO1076201G to its Named Insured, Dollar Point Association with a Policy Period of March 31, 2018 to March 31, 2019 (the "USLI Policy.") The USLI Policy contains a $1,000 Retention Limit for each Claim.

The Insuring Agreement to "COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY" provides:

> A. The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.
>
> B. The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent

Section II, FULL PRIOR ACTS COVERAGE PROVISION, provides:

> Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy, or the effective date of cancellation or non-renewal of this Policy, provided that the **Claim** is first made during the **Policy Period**, or the Extended

2

Reporting Period if applicable, and written notice of said **Claim** is reported to the **Company** as soon as practicable. There shall be no coverage for any **Claim** reported to the **Company** later than sixty (60) days after the end of the **Policy Period** or after the expiration of the Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A. The inception date of this Policy; or

B. The inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

Section III, "Definitions," contains the following:

B. "**Claim**" means:

(1) Any written demand seeking money damages; or

(2) Any proceeding initiated against the **Insured**, including any appeal there from, before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act.**

D. "**Defense Costs**" means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insureds**, resulting from the investigation, adjustment, defense and appeal of a **Claim. Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured**.

I. "**Loss**" means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

>   For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.
>
>   P.   **"Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, or **Personal Injury Act** committed or allegedly committed;
>
>   (1)   by the **Organization**; or
>
>   (2)   by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above.
>
>   It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

As per the Insuring Agreement cited above, USLI has a duty to defend Dollar Point with respect to any "Claim" filed against it. A "Claim" includes "[a]ny proceeding initiated against the **Insured** . . . before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the Insured has committed, or is responsible for, a **Wrongful Act**. The Complaint filed in the *Harris, et al. v. Dollar Point* action was filed in a court of law that is legally authorized to render an enforceable judgment for money damages or other relief. Thus, even though the Complaint does not seek money damages against Dollar Point, it does seek "other relief" which may satisfy this portion of the definition of "Claim." USLI reserves all of its rights in that regard.

Any such "Claim" must allege that Dollar Point has committed, or is responsible for a "Wrongful Act." A "Wrongful Act" is "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties . . . committed or allegedly committed" by Dollar Point. It is unclear whether or not the Complaint filed in the *Harris, et al. v. Dollar Point* action alleges that Dollar Point committed any "Wrongful Acts," as opposed to simply seeking a declaration of property rights. USLI reserves all of its rights in that regard.

While USLI may have a duty to defend Dollar Point against the allegations set forth in the *Harris, et al. v. Dollar Point* action, its duty to pay any judgment entered against Dollar Point or settlement agreed to is limited to those sums constituting a "Loss." A "Loss" is defined as damages, settlements, pre-judgment and post judgment interest. The Complaint filed in the *Harris, et al. v. Dollar Point* action does not seek any of these monetary damages but rather seeks solely equitable relief decreeing and clarifying the

5

respective parties' property rights. Thus, as presently constituted, there is no "Loss" for USLI to indemnify Dollar Point against or pay on its behalf. USLI reserves all of its rights in that regard.

Section II of the USLI Policy provides that the Policy does not apply to apply to any "Claim" based upon or arising out of any "Wrongful Act" or circumstance likely to give rise to a "Claim" of which the person or persons signing the Application had knowledge, or otherwise had a reasonable basis to anticipate might result in a "Claim," prior to the earlier of: A. The inception date of this Policy; or B. The inception date of the first Policy of this type the Company has issued to the Parent Organization, provided that the Company has written continuous coverage for the Parent Organization from such date to the inception date of this Policy. It appears that this dispute has been ongoing for many years prior to the inception of the USLI Policy. USLI reserves all of its rights in that regard.

In short, while USLI will provide Dollar Point with a defense to this action, Dollar Point will be solely liable to satisfy any relief ordered by the court with respect to this property dispute absent any award of monetary damages constituting a "Loss."

This letter is written to notify you that USLI is reserving all of its rights and defenses under the terms, conditions, provisions and exclusions of the above-referenced Policy as noted above. It is to be further understood that any action taken by our Company, agents, representatives or attorneys in investigating the incident involved or in defending any lawsuit filed in connection with this matter, or in participating in any settlement discussions or negotiations, does not constitute and is not intended as a waiver of any right or defenses available to USLI and shall not estop USLI from asserting, at a later time, any rights or Policy defenses which may be available now or at that time. All such rights and defenses are hereby expressly reserved.

In addition to providing a defense under a complete and full reservation of rights, we are also expressly reserving our right to withdraw from the defense and to be reimbursed our defense costs and fees incurred in the event that it is subsequently determined that there is no coverage under our Policy for the acts alleged by the Plaintiff or that no duty to defend existed under the terms and conditions of the USLI, including reimbursement for the defense of non-covered claims pursuant to <u>Buss v. Superior Court</u>. USLI specifically reserves the right to file a declaratory relief action seeking a declaration of the court as to its rights, duties and obligations with respect to your client's claims for coverage by reason of the underlying action.

Should you have any questions with respect to any aspect of this letter, please do not hesitate to contact us. If you believe this Claim has been wrongfully denied or rejected, you have the right to have the matter reviewed by the California Department of Insurance, Claims Services Bureau, 300 South Spring Street, Room 114, Los Angeles, California 90013. Their telephone number is (213) 346-6523 or (800) 927-4357.

6

Very truly yours,

*[signature]*

Brian D. Montague
Assistant Vice President
Examiner, Professional Liability Claims

c:	Ms. Alexa Orlando
	Burns & Wilcox, Ltd.
	3883 Howard Hughes Parkway
	Suite 1090
	Las Vegas, NV 89169

	Ms. Susan Driscoll
	Aegis Insurance Markets
	40169 Truckee Airport Road
	Truckee, CA 96161-4114

	Dean R. Headley, Esquire
	Law Office of Dean R. Headley
	P.O. Box 7755
	3092 N. Lake Boulevard, Suite 2
	Tahoe City, CA 96145

	Allison S. Hyatt, Esquire
	Freeman Mathis & Gary, LLP
	1013 Galleria Boulevard
	Suite 250
	Roseville, CA 95678