UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLLAR POINT ASSOCIATION, INC., | No. 2:22–cv–0995–KJN |
| Plaintiff, | |
| v. | ORDER |
| UNITED STATES LIABILITY INSURANCE COMPANY, | |
| Defendant. | |

    Dollar Point Association, Inc., ("Dollar Point"), a homeowners' association, sued United States Liability Insurance ("USLI"), its non-profit professional liability insurer, for breach of contract and breach of the implied covenant of good faith and fair dealing after USLI withdrew defense coverage in a third-party suit (the "Harris Action").[1] (Complaint, ECF No. 1.) The parties moved for summary judgment on the following question: Did the non-profit professional liability insurance policy require USLI to defend Dollar Point in the Harris Action?

    USLI contends it had no duty to defend Dollar Point for two reasons. First, the Harris Action was not a claim for a "wrongful act" within the meaning of the insurance policy. (USLI Memorandum, ECF No. 14-1 at 14-18.) Second, the Harris Action did not fall within the policy's

---

[1] All parties consented to the jurisdiction of a magistrate judge jurisdiction for all purposes under 28 U.S.C. § 636(c). (ECF Nos. 10, 11.)

1

duty to defend provision because the Harris Action did not seek "Loss" as defined in the policy. (Id. at 18-21.) In response, Dollar Point argues the Harris Action was a claim for a "wrongful act." (Dollar Point Memorandum, ECF No. 16 at 14-20.) Dollar Point next argues that USLI owed a duty to defend because the Harris Action was a claim that was timely made and not excluded. (Id. at 21-23.)

For the reasons discussed below, the court finds that USLI did not owe Dollar Point a duty to defend. The court declines to rule on whether the Harris Action was a claim for a "wrongful act," as this issue is not dispositive. USLI's motion is GRANTED and Dollar Point's motion is DENIED.

I. Background

A. The Harris Action and Policy

On November 1, 2018, Michael and Anne Harris, who owned property at the Dollar Point residential development, filed the Harris Action against Dollar Point in the Placer County Superior Court.[2] (Complaint, ECF No. 14-6 at ¶6; Verified Amended Complaint (VAC), ECF No. 14-7). The Harrises asserted causes of action for irrevocable license, declaratory relief, quiet title via adverse possession, and easement by prescription. (ECF No. 14-7.) The Harris Action concerned a strip of land known as "Lot 62," which the Harrises alleged to have landscaped and improved over several years. (Id. at ¶¶ 9-19.) The Harrises sought a declaratory judgment for an irrevocable license to continue to landscape and make improvements to Lot 62, or alternatively, property rights to Lot 62. (Id. at 12-13.)

---

[2] USLI requests the court take judicial notice of two documents, one of which is the operative complaint in this matter, (ECF No. 14-6), the other is the Verified Amended Complaint (VAC) filed on the docket in the underlying Harris Action (Michael Harris, et al., vs. Dollar Point Association, Inc., et al., Superior Court of the County of Placer, Case No. SCV-0042030), (ECF No. 14-7). (Request for Judicial Notice, ECF No. 14-5.) The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are proper subjects of judicial notice. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007). The Court therefore GRANTS USLI's unopposed request for judicial notice.

On November 30, 2018, Dollar Point filed a claim for defense coverage in the Harris Action under its claims made,[3] non-profit professional liability policy with USLI. (See USLI Letter, ECF No. 14-4.) The policy, which covered the period from March 31, 2018, to March 31, 2019, included the following provisions under the non-profit directors' and officers' ("D&O") coverage:

> NOTICE: This is a Claims Made Policy. This Policy only covers those **Claims** first made against the Insured during the **Policy Period** or Extended Reporting Period, if purchased. **Defense Costs** shall be applied against the RETENTION.

(Policy, ECF No. 14-3 at 2, 6.) Section I.A. of the agreement set forth the following indemnification requirements:

> The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

(Id. at 6.) Loss was defined within the policy as follows:

> [D]amages, settlements, front pay and back pay, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

(Id. at 7-8.) Section I.B. set forth the following duty to defend provision:

> The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.

(Id. at 6.)

---

[3] A "claims made" policy is one of the two most common types of professional liability insurance policies offered. See, e.g., Pac. Emps. Ins. Co. v. Superior Ct., 221 Cal. App. 3d 1348, 1356 (Ct. App. 1990). "Claims made" policies differ from "occurrence" policies in various ways, one of which is that an "occurrence" policy provides coverage for occurrences that arise during the policy period even though the claim is made after the policy has expired. (Id.) Under a "claims made" policy, the carrier agrees to assume liability for errors, including those made prior to the inception of the policy so long as a claim is made during the policy period. (Id. at 1356-357.)

"Claim" is defined as:

> 1) Any written demand seeking money damages; or
> 2) Any proceeding initiated against the **Insured**, including any appeal there from, before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act**.

(Id. at 7.)

USLI initially accepted defense of the Harris Action under a reservation of rights, but later withdrew its defense. (USLI Letter, ECF No. 14-4 at 6; ECF No. 14-6 at ¶¶ 11-12.) Dollar Point subsequently filed this instant action for breach of contract and breach of the implied covenant of good faith and fair dealing.

USLI moved to dismiss the complaint and Dollar Point opposed. (ECF Nos. 14, 16.) USLI and Dollar Point stipulated to converting the motion to dismiss and oppositions to cross-motions for partial summary judgment on the duty to defend, and the parties filed further briefing. (ECF Nos. 18, 20, 21.)

II. Legal Standards[4]

    A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is mandated "against party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[4] The policy does not contain a choice of law provision. In diversity cases, federal courts apply the substantive law of the forum in which the court is located, including the forum's rules regarding choice of law. Ins. Co. of N. Am. v. Fed. Exp. Corp., 189 F.3d 914, 919 (9th Cir. 1999); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Here, the parties rely on application of California law in their arguments, and neither party suggests that the laws of any foreign state should govern. (ECF Nos. 14-1, 16, 20, 21.) Therefore, the court applies California substantive law.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Id.

B. Duty to Defend

To prevail on a motion for summary judgment regarding the duty to defend, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287, 300 (1993). The insured need only show a mere possibility of coverage under the policy to establish a duty to defend, while an insurer is entitled to summary judgment only upon a showing that no potential for coverage exists under the policy as a matter of law. Regional Steel Corp. v. Liberty Surplus Ins. Corp., 226 Cal. App. 4th 1377, 1389 (2014). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." Montrose Chem. Corp., 6 Cal. 4th at 300.

The mutual intention of the parties at the time the contract is formed, inferred solely from the written provisions of the contract, governs interpretation of an insurance policy. AIU Insurance Co. v. FMC Corp., 51 Cal.3d 807, 821–22 (1990). Although courts will not strain to create an ambiguity, a provision is ambiguous when it is capable of two or more reasonable constructions. McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co., 35 Cal. App. 5th 1042, 1050 (2019). "Uncertainties in the terms of coverage are resolved in favor of the insured," but "expectations of coverage must be reasonable in light of the plain language of the policy." Alex Robertson Co. v. Imperial Cas. & Indem. Co., 8 Cal. App. 4th 338, 343 (1992). An insurance contract must be construed in a manner that gives a reasonable meaning to all its provisions in a natural, reasonable, and practical manner, with reference to the risk, subject matter, and purposes of the entire contract. Home Indem. Co. v. Leo L. Davis, Inc., 79 Cal. App. 3d 863, 864 (Ct. App. 1978).

III.  Discussion

    A.  USLI's Motion, ECF No. 14

USLI did not owe Dollar Point a duty to defend for one simple reason: the natural reading of the policy provides that the duty to defend applies to actions seeking "Loss," and the Harris Action did not seek "Loss." Dollar Point concedes the Harris Action did not seek "Loss." (See ECF No. 16 at fn.5, stating the indemnity provision was not implicated because "the Harris Action did not seek monetary damages"); (ECF No. 21 at 4, noting that the Harris Action seeks relief other than money damages). Indeed, the Harris Action sought quiet title or an equitable irrevocable license, which are equitable remedies. (ECF No. 14-7 at 12-13;) Weeden v. Hoffman, 70 Cal. App. 5th 269, 291 (2021) ("[A]ctions to quiet title, like true declaratory relief actions, are generally equitable in nature." (citations omitted)). The policy defines "Loss" as "damages, settlements, front pay and back pay, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law". (ECF No. 14-3 at 7-8.) Because the Harris Action did not seek "Loss," no potential for coverage existed and USLI was under no obligation to provide Dollar Point with defense coverage. Montrose Chem. Corp., 6 Cal. 4th at 300 ("[T]he insured must prove the existence of a *potential for coverage*, while the insurer must establish the *absence of any such potential*.").

Because no duty to defend existed, plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law. See Basalite Concrete Products, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA. at *6 (E.D. Cal. May 17, 2013) (dismissing breach of contract claim with prejudice because the plaintiffs "fail[ed] to plausibly allege a duty to defend based upon a potential claim for slogan infringement"); Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1 (1995), as modified on denial of reh'g (Oct. 26, 1995) ("[I]f there is no potential for coverage and hence no duty to defend, there can be no action for breach of implied covenant of good faith and fair dealing."). The court notes that USLI's motion requests partial summary judgment on the issue of the duty to defend; however, motions for partial summary judgment do not dispose of all claims. See White v. Lee, 227 F.3d 1214, 1240 (9th Cir. 2000) ("[P]artial summary judgment orders do not dispose of all claims and do not end the

litigation on the merits."). Because the absence of a duty to defend disposes of Dollar Point's breach of contract and breach of implied covenant of good faith and fair dealing claims, and no claims remain in the complaint, the court therefore construes USLI's motion as a motion for summary judgment, as opposed to partial summary judgment. USLI's motion for summary judgment is GRANTED.

### B. Dollar Point's Motion, ECF No. 16

Dollar Point unsuccessfully argues that the language in the duty to defend provision is ambiguous. This argument is unsupported because Dollar Point's reading of the duty to defend provision is flawed. Under the policy, USLI "has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false, or fraudulent." (ECF No. 14-3 at 15.) Dollar Point contends that a "Claim to which this insurance applies" is any claim that was timely made and not excluded. (ECF No. 21 at 14) ("[T]he Policy as issued to Dollar Point requires USLI to defend 'Claims' for 'Wrongful Acts' that are…. first made during the policy period.… reported during the policy's extended reporting period, and…. not excluded by exclusionary provisions."). However, Dollar Point's reading is problematic because it mistakes two necessary conditions of a claim (the first that the claim be "timely made," the second that the claim be "unexcluded") for a sufficient condition. The plain language of the policy indicates that being timely made and not being excluded are necessary conditions for coverage. (See ECF No. 14-3 at 6, "this Policy only covers those Claims first made against the Insured during the Policy Period or Extended Reporting Period, if purchased…" ;) (ECF No. 14-3 at 20, "[t]he company shall not be liable to make payment for loss or defense costs in connection with any claim made against the insured arising out of… [exclusions]".). Because Dollar Point's argument treats being a "timely made" claim and being an "unexcluded" claim as sufficient conditions for coverage, its construction of the policy is flawed.

In addition to the clear logical error, Dollar Point's argument would render the portions of the exclusions provision surplusage; specifically, the language in the exclusions provision that states that defense costs are not covered for excluded claims. (ECF No. 14-3 at 20.) The policy's exclusions expressly state that defense costs are not covered for excluded claims. (Id.) However,

under Dollar Point's reading, the phrase "Claim to which this insurance applies" means any claim that is timely made and reported and not excluded.  (ECF No. 21 at 14.)  Were this the case, there would be no need for the exclusions provision to address whether defense costs are covered, and the policy language regarding defense costs in the exclusions section would be surplusage.

Dollar Point's remaining arguments are equally unavailing.  Dollar Point contends that the phrase "Claim to which this insurance applies" cannot mean claims seeking "Loss," because this reading would render the phrase "other relief" in the definition of the term "Claim" surplusage.  (ECF No. 14-3 at 7; ECF No. 16 at 16.)  Not so.  The policy is a "claims made" policy.  (ECF No. 14-3 at 6.)  Under a "claims made" policy, liability is only assumed for claims made during the policy period.  See, e.g., Pac. Emps. Ins. Co., 221 Cal. App. 3d at 1356–57.  The term "other relief" informs the policyholder what constitutes a "Claim."  Accordingly, the term "other relief" carries significance and is not surplusage.

Finally, the only case Dollar Point cites to for support, Marie Y. v. General Star Indemnity Co., does not help Dollar Point's position.  110 Cal. App. 4th 928, 951 (2003).  There, the court ruled that an insurer was required to provide defense coverage, even though the policyholder was barred from receiving indemnity coverage.  Id.  This determination was because the policy contained an explicit clause extending the duty to defend to situations in which there was no duty to indemnify.  Id.  See Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 507 (1998) (policy expressly promised to both indemnify and defend any claims arising from certain specified "offenses" committed during the policy period); Melugin v. Zurich Canada, 50 Cal. App. 4th 658, 669 (1996) ("The bottom line in this case is that Zurich explicitly offered its insureds [defense] coverage for claims alleging liability for 'discrimination…'").  In contrast, the USLI policy does not contain any express clause extending the duty to defend any actions that might fall outside the scope of the insuring agreement.  The policy in Marie Y. is therefore distinguishable from the USLI policy.

Dollar Point's motion fails to demonstrate a reasonable construction of the policy that would potentially cover the Harris Action.  See e.g., Montrose Chem. Corp., 6 Cal. 4th at 300.  Therefore, Dollar Point's motion for partial summary judgment is DENIED.

### IV. Conclusion

For the foregoing reasons, USLI's motion (ECF No. 14) is GRANTED, Dollar Point's motion is DENIED (ECF No. 16), and the Clerk of Court shall enter judgment in favor of USLI and close this case.

Dated: May 18, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

doll.0995